2026 IL App (1st) 232162-U

FIFTH DIVISION
May 29, 2026

No. 1-23-2162

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| KENNETH R. MANNIE SR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 L 008716 |
| | ) | |
| EDGE BROOK MEDICAL and | ) | Honorable |
| GENESIS CARD SERVICES, INC., | ) | John Curry, Jr., |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's dismissal of plaintiff's second amended complaint with prejudice is affirmed where the record does not demonstrate that the court abused its discretion in making that dismissal with prejudice and his complaint does not state a claim.

¶ 2    Plaintiff Kenneth R. Mannie Sr. appeals from the circuit court's November 2, 2023, order that dismissed his second amended complaint (SAC) with prejudice. Mr. Mannie had accused Edge Brook Medical Clinic (Edge Brook) and Concora Credit Inc., f/k/a Genesis FS Card Services, Inc. (Genesis) of fraud and identity theft after he was charged for elective treatments that he alleged

were never rendered and a subsequent delinquent balance on a line of credit was reported to credit agencies. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On September 26, 2022, Mr. Mannie, representing himself *pro se,* filed a complaint in the circuit court against Edge Brook and Genesis in which he accused them of "join[ing] forces to commit fraud by stealing [his] identity[,] issuing a credit card and other credit and fraudulently creating an account for services never rendered." Mr. Mannie asked for $250,000 in damages, alleging that his credit score was lowered when the delinquent balance he allegedly owed was reported to credit agencies, preventing him from obtaining a mortgage that he had previously qualified for.

¶ 5     Mr. Mannie's original complaint was dismissed for failure to state a cause of action, and he was given leave to file an amended complaint, which he did on November 17, 2022. His amended complaint stated, "Edge Brook Medical and Genesis FS Card Services are being charged with identify theft and fraud." He explained that he attended an initial evaluation for certain treatments at Edge Brook but left and never returned after learning that the treatment would require at least 12 sessions and cost thousands of dollars. According to Mr. Mannie, Edge Brook then opened a line of credit in his name with Genesis, on which it charged $3500, the cost of the full treatment that he never received.

¶ 6     On January 26, 2023, Mr. Mannie filed a motion asking, "Defendant to cease and desist reporting non-payment to credit agencies." According to Mr. Mannie, Edge Brook and Genesis "destroyed" his credit score. Attached to his motion were documents from First Premier Bank and Experian showing his credit score declining as well as a document confirming that Mr. Mannie had an account with Illiana Financial. Mr. Mannie also attached statements from Genesis showing

2

a growing outstanding balance and notice that his account was delinquent.

¶ 7    Genesis moved to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2022)). Genesis argued that the allegations in Mr. Mannie's complaint did not meet Illinois's minimum pleading requirements and that he lacked standing. It also argued his complaint was defective for several additional reasons, including that it consisted mainly of "multiple legal conclusions alleged in narrative form."

¶ 8    The court granted Genesis's motion but, on April 25, 2023, allowed Mr. Mannie to replead. That same day, Mr. Mannie filed his SAC, the operative one here. In the SAC, Mr. Mannie provided a more detailed account of the events leading up to his lawsuit. The SAC is a single page with unnumbered, single-spaced paragraphs and includes many words and phrases written in all capitalized letters for emphasis (which we have omitted in quotations for readability).

¶ 9    In his SAC, Mr. Mannie explained that he visited Edge Brook on May 25, 2022, for what he thought was a free consultation. They collected his personal information but he "refused to commit to any further assessment or treatment." According to Mr. Mannie, Genesis later mailed a bill to his daughter's address. When he contacted Genesis, he was told that he was issued a credit card on which Edge Brook had charged $3500, and the balance was now delinquent. Mr. Mannie then contacted Edge Brook, which explained that he was charged "because of the verbal conversation saying that they had the right to charge [him] even though no service had been provided." According to Mr. Mannie, "No documents exist with my signature authorizing anything, and there is no record where I received any services from Edge Brook Medical." He alleged that "[the] fraudulent mailing address and the credit card issued with no authorization substantiates that these defendants were totally committed to this act of identity theft." Mr. Mannie noted that Genesis reported this delinquency to credit agencies, causing his credit score to decline,

and requested $750,000 in unspecified damages.

¶ 10    Mr. Mannie attached as exhibits to his SAC bank statements showing his credit score as 689 on October 2, 2021, before his visit to Edge Brook, and 560 on January 3, 2023, after his visit to Edge Brook. He also attached a letter from Credit One Bank, dated April 12, 2023, indicating that he was denied a credit line increase because "[y]our account has recently been granted an unsecured credit line increase."

¶ 11    On August 18, 2023, Edge Brook moved to dismiss the SAC pursuant to sections 2-615 and 2-619(a)(9) of the Code. Edge Brook argued that Mr. Mannie's SAC did not comply with section 2-603 of the Code (735 ILCS 5/2-603(b) (West 2022)) because he did not clearly state his causes of action in separate counts or organize them in separate numbered paragraphs. Additionally, he failed to allege the elements required for identity theft and fraud. Edge Brook also argued that, contrary to the allegations in Mr. Mannie's SAC, he visited the clinic twice, signed forms accepting the non-refundable charges, and acknowledged that the charges would be financed at a fixed interest rate of 30% with a minimum monthly payment amount of 5% of the "running balance."

¶ 12    As exhibits to its motion, Edge Brook attached: a list of 70 other lawsuits in which Mr. Mannie is a party, many of them as a *pro se* plaintiff; an affidavit of Tony Avila, a contractor for Edge Brook, stating that Mr. Mannie signed a document in his presence agreeing to finance the cost of treatment; and a copy of that signed document—a "Patient Profile Sheet" from Edge Brook purportedly filled out and signed by Mr. Mannie agreeing to a course of treatment and payment plan, the terms of which were handwritten at the end of the document and initialed by Mr. Mannie.

¶ 13    On September 22, 2023, Mr. Mannie filed a motion asking the court to add unspecified "criminal charges" in the matter. He attached to his motion a letter written to the general manager

of WGN TV explaining that a service advertised on their station stole his identity, and a police report filed with the Chicago Heights Police Department dated September 14, 2023, in which he reported to an officer that Edge Brook and Genesis committed "Aggravated Identity Theft Against a Person 60 Years of Age or Older."

¶ 14    The court denied Mr. Mannie's motion to add criminal charges on October 5, 2023, and granted Edge Brook's motion to dismiss with prejudice. The next day, Mr. Mannie submitted a motion to vacate the dismissal, arguing that he did not receive notice of the briefing schedule or the exhibits to Edge Brook's motion to dismiss. On October 11, 2023, the court held a hearing on Mr. Mannie's motion to vacate and Edge Brook and Genesis's motions to dismiss. No transcript of the hearing is in the record on appeal. The court's written order continued the hearing to November 2, 2023, and noted, "Genesis shall file a supplemental brief related to [Mr. Mannie's] credit reporting argument on or before October 25, 2023."

¶ 15    On October 25, 2023, Genesis submitted that supplemental briefing in support of their motion to dismiss. According to Genesis, Mr. Mannie raised a new argument at the October 11, 2023, hearing: "that not only was the reduction in credit score a damage caused by his alleged claims of Identity Theft and Fraud, but that the act of credit reporting the debt was a separate statutory violation." Genesis argued that this claim was never pleaded in the operative SAC and was nevertheless preempted by the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 *et seq*. (2022)). Even if the claim was not preempted, it would fail because Mr. Mannie did not satisfy the prerequisites for an FCRA claim because he did not allege that he disputed Genesis's credit reporting or that the agencies notified Genesis of any such dispute.

¶ 16    On November 2, 2023, the circuit court denied Mr. Mannie's motion to vacate the order granting Edge Brook's motion to dismiss, granted Genesis's motion to dismiss, and dismissed all

claims with prejudice. On November 9, 2023, Mr. Mannie filed his notice of appeal.

¶ 17    Counsel for Edge Brook filed an appearance in this court which was subsequently withdrawn. In their motion to withdraw, counsel explained that to the best of their knowledge, Edge Brook was now "defunct and non-operational." Edge Brook remains a party to this appeal but has not participated in any way since this court granted counsel's motion to withdraw on March 4, 2025.

¶ 18                                II. JURISDICTION

¶ 19    The circuit court entered the order dismissing all claims with prejudice on November 2, 2023. Mr. Mannie timely filed a notice of appeal on November 9, 2023. We have jurisdiction over Mr. Mannie's appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), which govern appeals from final judgments entered by the circuit court in civil cases.

¶ 20                                III. ANALYSIS

¶ 21    On appeal, Mr. Mannie asks this court to reverse the dismissal of his SAC with prejudice. He argues that the circuit court erred in dismissing his complaint with prejudice on the basis that he sought "injunctive relief and criminal charges," where there was an adequate remedy at law. Mr. Mannie contends that *Fulton-Carroll Center, Inc. v. Industrial Council of Northwest Chicago, Inc.*, 256 Ill. App. 3d 821 (1993), holds that any dismissal in these circumstances should be without prejudice. Genesis counters that *Fulton-Carroll Center* is of no relevance where the SAC sought neither injunctive relief nor criminal charges. For the following reasons, we affirm.

¶ 22    A motion to dismiss brought pursuant to section 2-615 is "a facial challenge asserting that the complaint fails to state a cause of action upon which relief can be granted." *Village of Willow Springs v. Village of Lemont*, 2016 IL App (1st) 152670, ¶ 22. The question raised by such a motion

is "whether the well-pleaded facts of the complaint, taken as true and construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Loman v. Freeman*, 229 Ill. 2d 104, 109 (2008).

¶ 23    A court may dismiss a complaint with prejudice when it is "apparent that the plaintiff can prove no set of facts that will entitle him or her to recover." *Bruss v. Przybylo*, 385 Ill. App. 3d 399, 405 (2008). Whether a complaint should be dismissed with prejudice, that is, without granting leave to amend, is a decision within the circuit court's discretion. *Blazyk v. Daman Express, Inc.*, 406 Ill. App. 3d 203, 209 (2010). Thus, our review of the circuit court's decision to make that dismissal with prejudice is reviewed for an abuse of discretion. *Bruss*, 385 Ill. App. 3d at 405. In contrast, our review of the circuit court's ruling on the motion to dismiss itself is reviewed *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29.

¶ 24    Mr. Mannie's only argument on appeal is that his complaint should not have been dismissed with prejudice. He offers no suggestion as to what he could have put in the complaint had he been allowed to replead. Rather, his entire argument is based on analogizing this case to *Fulton-Carroll.* In that case, the plaintiff alleged that defendants had breached their contracts with plaintiff by attempting to terminate plaintiff's exclusive management rights under the contracts. *Fulton-Carroll*, 256 Ill. App. 3d at 822. Plaintiff sought to enjoin the defendants from terminating the contracts and to require them to comply with the contract terms. *Id*. The circuit court dismissed the complaint with prejudice because it sought injunctive relief and there was an adequate remedy at law. *Id*. We reversed on the basis that in such circumstances, "[t]he appropriate remedy is to strike the plaintiff's prayer for injunctive relief and allow the plaintiff to pursue its remedy at law." *Id*. at 824–25.

¶ 25    Mr. Mannie argues that his case is similar because in his complaint he sought injunctive

relief and criminal charges against the defendants and his complaint should not have been dismissed with prejudice for seeking the wrong remedy. However, the difference is that in *Fulton-Carroll,* the *only* problem with the complaint was that it sought the wrong remedy and it was clear that this was the basis on which the circuit court dismissed with prejudice. That is not true in this case.

¶ 26    Because we must review the dismissal with prejudice under an abuse of discretion standard, we need to know on what basis the circuit court decided that the dismissal was with prejudice. Transcripts of the proceedings in the circuit court or acceptable substitutes are necessary for us to review this decision. See *Northwestern Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 79 (stating that an appellant's duty to provide a complete record on appeal is "especially important when [as here] the abuse-of-discretion standard applies" (Internal quotation marks omitted.)). None of that exists here. Because the record before us is insufficient to support Mr. Mannie's claims of error, we must presume the circuit court acted in conformity with the law and with a sufficient factual basis for its findings and construe any doubts arising from the record against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). We therefore cannot say the court abused its discretion in dismissing with prejudice.

¶ 27    Further, the record that is before us reflects that the circuit court afforded Mr. Mannie several opportunities to adequately plead a claim, including by vacating its initial dismissal of his complaint after he alleged that he was not made aware of the briefing schedule.

¶ 28    It also appears that Mr. Mannie's complaints all suffered from some of the same defects. For example, at various points, both Genesis and Edge Brook pointed out Mr. Mannie's failure to comply with section 2-603 of the Code, which requires that a complaint "contain a plain and concise statement of the pleader's cause of action *** and [that] [e]ach separate cause of action

upon which a separate recovery might be had shall be stated in a separate count *** and each count *** shall be separately pleaded, designated and numbered." 735 ILCS 5/2-603(a), (b) (West 2022). Despite being made aware of these requirements, Mr. Mannie's SAC—his third attempt at bringing his claims—did not contain separately numbered counts.

¶ 29 We additionally note that, even though the court afforded Mr. Mannie multiple opportunities to amend his complaint, at no time did he state a claim upon which relief could be granted. While neither party addresses the sufficiency of the claims alleged, the lack of any coherent theory of recovery further supports our conclusion that the court did not abuse its discretion in making the dismissal with prejudice.

¶ 30 Mr. Mannie alleged that both Edge Brook and Genesis committed fraud and identity theft by charging him for treatments he never received on a line of credit he never opened, and that the subsequent reporting of his delinquency to credit agencies negatively impacted his credit score.While Mr. Mannie's SAC includes several details about his visit to Edge Brook and belief that he had not committed to any treatment or agreed to finance any treatment, he has failed to connect these details to the elements of any claim.

¶ 31 Although the Code provides that "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet" (735 ILCS 5/2-612 (West 2022)), Illinois remains a fact-pleading jurisdiction, and conclusory allegations alone are thus insufficient to state a cause of action (*Doe v. Coe*, 2019 IL 123521, ¶ 32). Instead, enough facts must be alleged "to bring a claim within a legally recognized cause of action." *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 368 (2004). Mr. Mannie did not come close to doing so here, despite the circuit court's patience.

¶ 32 To state a claim for common-law fraud, "a plaintiff must plead: (1) a false statement of

material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15. While Mr. Mannie makes clear in his SAC that he believed he was only visiting Edge Brook for a free evaluation and "refused to commit to any further assessment or treatment," he does not plead any of the elements needed for a proper claim. Mr. Mannie alleges that when he contacted Edge Brook about the credit card issued to him, they explained that they charged him because of a "verbal conversation saying that they had the right to charge me even though no service had been provided." While this allegation, taken to be true, may show predatory behavior, it does not allege that Edge Brook knowingly made a false statement for purposes of fraud. See *Chatham Surgicore, Ltd. v. Health Care Service Corp*., 356 Ill. App. 3d 795, 803 (2005) (claims of fraud have a higher standard of pleading requiring, "sufficient specificity, particularity, and certainty.")

¶ 33    The only other claim that Mr. Mannie purports to plead—identity theft—is not a civil cause of action but a criminal offense. 720 ILCS 5/16-30 (West 2022). This can only be prosecuted by the State's Attorney or the Attorney General. See *McCall v. Devine*, 334 Ill. App. 3d 192, 205 (2002) ("It is settled that the State's Attorney, as a member of the executive branch of government, is vested with exclusive discretion in the initiation and management of a criminal prosecution. [Citations.]' " (Internal quotation marks omitted.)).

¶ 34    In sum, Mr. Mannie has not provided a record on appeal that is sufficient to support a claim that the court abused its discretion in entering the dismissal of his SAC with prejudice, and he has failed to state any cognizable claim. Accordingly, we affirm the circuit court's order.

¶ 35                                         IV. CONCLUSION

¶ 36    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.